IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY KINSLOW,

    Plaintiff,

v.                                                      Civ. No. 07-1164 MV/RLP

NEW MEXICO CORRECTIONS
DEPARTMENT, *et al.*,

    Defendants.

## MAGISTRATE JUDGE'S SECOND REPORT AND RECOMMENDATION[1]

    1.    This is a proceeding brought pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutional Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq*; and the New Mexico Religious Freedom Restoration Act, NMSA (1978) §§ 28-22-1 *et seq*. Plaintiff seeks injunctive, declaratory, and monetary relief. Before the Court is Plaintiff's Motion for Partial Summary Judgment.

    2.    Summary judgment is appropriate when there are no genuine issues of material fact. Fed.R.Civ.P. 56. "Material" means outcome determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). On August 26, 2008 the Court held an evidentiary hearing. Because the testimony at the hearing was sufficient to address all of Plaintiff's statutory claims raised in the Complaint, the Court is able to dispense with all but one of Plaintiff's claims. We begin with a discussion of the procedure of this case.

---

[1] Within ten (10) days after a party is served with a copy of the Magistrate Judge's Second Report and Recommendation that party may, pursuant to 28 U.S.C. § 636 (b)(1) file written objections in the United States District Court to the Report and Recommendation. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Report and Recommendation. If no objections are filed, no appellate review will be allowed.

3.  When his Complaint was filed, Plaintiff was incarcerated at the Southern New Mexico Corrections Facility in Las Cruces, New Mexico. His claims were against three Defendants at that facility and against the New Mexico Corrections Department and Joe Williams, the Secretary of Corrections. He has since been transferred to the facility in Santa Fe, New Mexico, over which the New Mexico Corrections Department and Joe Williams remain in control.

4.  In his Complaint, Plaintiff alleges his rights were violated by the following acts of Defendants: he was required to prove his Native American status before being allowed access to the prison's Sweat Lodge; he was denied the access to the Sweat Lodge that prison policy provides; he was being denied materials for his medicine bag, which he requires for his spiritual practice.

5.  After Plaintiff's Motion for Partial Summary Judgment was filed, the Court ordered Defendants to submit a *Martinez* Report [Doc. 16], requesting policies, etc. concerning when an inmate's religious observances may be restricted. The *Martinez* report did not contain adequate information for the Court to determine the prison's policies, practices, and security needs. The Court ordered a Supplemental *Martinez* report [Doc. 22]. The Court advised Defendants that they had conceded they were limiting Plaintiff's access to the Sweat Lodge and denying him materials for his medicine bag, but that Defendants had not come forth with the specific policies for their actions. The Supplemental *Martinez* Report was received and provided no additional information. The Court then ordered an evidentiary hearing.

6.  At the hearing, Plaintiff testified he had been denied the access to the Sweat Lodge that prison policy provided for, and he was also denied materials necessary for his

medicine bag: the materials either not been given to him or were severely limited in amount.  He stated he had been required to prove to prison officials he was Native American, which he thought was discriminatory.

7. Prison policy provides that Level IV prisoners, such as Plaintiff, are entitled to weekly Sweat Lodge access if they are housed at a Level I through IV facility, such as the facility at Las Cruces, New Mexico.  *See* New Mexico Corrections Department Policy CD-101100 at 6, ¶ J-1. [Doc. 21].[2]  The policy also provides for the issuance of various items, including tobacco, for an individual's medicine bag or pouch.  *Id.* at 2, ¶ B 1-9. Religious items - including the Sweat Lodge and medicine bag - shall be afforded to Native Americans "consistent with reasonable security requirements."  *Id.* at 3, ¶ E.  The policy also requires Native Americans to submit documentation to prove their Native American heritage.  *Id.* at 4, ¶ C 2.

8. Advised that because Plaintiff had made a *prima facie* showing that his religious rights were being infringed upon, Defendants were encouraged to put forth some valid penological reasons for their actions.  Two Defendants testified, Deputy Warden German Franco and Chaplain Jeff Mulac.

9. Deputy Warden Franco stated that prisoners were put into different tiers and different pods and weren't allowed to congregate at the Sweat Lodge.  He was unsure as to why inmates were only allowed access to the Sweat Lodge once a month instead of the

---

[2]  This policy was also submitted by Defendants at Doc. 25, Exhibit 1-B.

weekly access called for by prison policy. He stated that he didn't think it would "hurt" to make the Sweat Lodge available on a more regular basis.

10. Chaplain Mulac testified that items for the medicine bag included tobacco, which he said was a "known" security risk. He testified that Plaintiff's requests were for more quantities of tobacco and herbs than any other prisoner. He stated that because of the security risk, prisoners were given a three-month supply at one time and if they wanted additional amounts, they had to wait until the three months had expired.[3]

11. "'In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must show that a prison regulation 'substantially burdened' his sincerely-held religious beliefs.'" *Wares v. Simmons*, 524 F. Supp.2d 1313, 1319 (D. Kan. 2007) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). If that showing is made, prison officials must identify legitimate penological interests to justify their action. *Id.* (quoting *Kay v. Bemis*, 500 F.3d 1214, 1219 n.2 (10th Cir. 2007)).

12. In this case, Plaintiff put forth sufficient evidence that his religious activities were substantially burdened, but the prison officials failed to put forth evidence of any legitimate penological interests to justify their actions. "Security" was mentioned several times, but in a conclusory manner. For example, there was no evidence as to why security

---

[3] The Court notes that peyote is listed as a religious item, but is accompanied by the statement that the use of peyote by any inmate is strictly prohibited. Policy, ¶ B 9. No limiting notation accompanies the tobacco listing. In any event, if tobacco presents such a security threat, it would be more logical to provide it on a weekly, not quarterly, basis.

4

was a concern for the Sweat Lodge seven days of the week, but not once a month.  In other words, no specific evidence was adduced as to why prison officials' actions overrode their own written policy.  Accordingly, Plaintiff is entitled to summary judgment on his First Amendment claim under 42 U.S.C. § 1983.

13.     Plaintiff seeks compensation for a violation of New Mexico Religious Freedom Restoration Act, §§ 28-22-1, *et seq*.  Having prevailed on his § 1983 First Amendment claim, Plaintiff has also prevailed on this claim for the same reasons.  *See, supra*, ¶¶ 6-10.  This Act specifically waives sovereign immunity, § 28-22-4(B), and provides for injunctive, declaratory, and compensatory damages pursuant to the Tort Claims Act, NMSA (1978) § 41-4-1.  *See* § 28-22-4(A)(1)-(2).

14.     Plaintiff also alleges that prison officials discriminated against him by requiring him to prove his Native American heritage.  As indicated previously, this is a provision in the policy and, other than Plaintiff's belief it is discriminatory the evidence presented was insufficient to support this claim.  Accordingly, this claim is denied.

15.     Plaintiff's next claim is under RLUIPA.  "The inquiry under RLUIPA is more rigorous than under the First Amendment." *Abdulhaseeb v. Calbone*, 2008 WL 904661, *23 (W.D. Okla. 2008) (quoting *Lovelace v. Lee*, 472 F.3d 174, 188 n.3 (4th Cir. 2006)).

> RLUIPA forbids a prison from imposing a substantial burden on the religious exercise of an inmate unless it demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least

5

> restrictive means of furthering that compelling governmental interest.

*Ahmad v. Furlong*, 435 F.3d 1196, 1197 (10th Cir. 2006) (quoting §§ 2000cc-1(a) & 2000cc-5(7)(A)) (internal quotation marks & ellipses omitted).

16. As noted by the *Abdulhaseeb* court, the Tenth Circuit Court of Appeals has not defined "substantial burden," but the Fourth Circuit has adopted the Supreme Court's definition of substantial burden in the related context of the Free Exercise Clause: a substantial burden is one that puts substantial pressure on an adherent to modify his behavior and violate his beliefs. 2008 WL 904661, *24 (citing *Lovelace*, 472 F.3d at 187.

17. The evidence presented at the hearing does not indicate that Defendants have put a "substantial burden" on Plaintiff. Plaintiff indicated at the hearing that he was willing to go to the Sweat Lodge without other congregants or for less than six hours weekly as provided in the policy. He provided no testimony that the restraints upon him made him violate his beliefs, merely that the policy was not being adhered to. These facts are insufficient to support a claim under RLUIPA and so it is denied.[4]

18. Under § 1983, a plaintiff who suffers a violation of a federally protected right but is unable to demonstrate measurable monetary damage is entitled to nominal damages. *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002). There is no evidence of "measurable monetary damage." I recommend that he be

---

[4] Accordingly, the Court does not address the issue of whether RLUIPA waives a state's Eleventh Amendment immunity. *See, e.g.*, *Sisney v. Reisch*, 533 F. Supp.2d 952 (D.S.D. 2008)(collecting cases).

awarded a total of $100.00 in nominal damages as compensation for violations of both § 1983 and § 28-22-4(A)(1)-(2).

19.     Plaintiff seeks punitive damages.  Under §§ 1983, "[p]unitive damages are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  There was no evidence of evil motive or intent or reckless or callous indifference.  What the evidence did show was the failure of prison officials to substantiate their reasons for not following their own policies, but this does not rise to the level required for punitive damages.

20.     Finally, Plaintiff sought injunctive relief, but has since been moved to the Santa Fe prison, a Level V facility.  The testimony indicated that Plaintiff is being housed there temporarily.  The testimony indicated that prison officials will relocate him to a facility somewhere other than Santa Fe or Las Cruces.  Conditions at the Santa Fe facility are the subject of Plaintiff's second Motion for Preliminary Injunctive Relief [Doc. 38] and will be addressed when Defendants submit their Response, on or before September 13, 2008. In any event, as against the Las Cruces Defendants, the Court cannot afford Plaintiff injunctive relief because of the transfer and therefore there is no live Article III case or controversy. *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (1999).   I therefore recommend that injunctive relief against the Las Cruces Defendants be denied.

RECOMMENDED DISPOSITION

I recommend that Plaintiff''s Motion for Partial Summary Judgment be granted in favor of Plaintiff and against Defendants on Plaintiff's First Amendment claim under 42 U.S.C. § 1983 and his claim under the New Mexico Religious Freedom Restoration Act, §§ 28-22-1, *et seq*. I further recommend that Plaintiff be awarded the amount of $100.00 for these violations.

I recommend that Plaintiff's claims for racial discrimination, violations of the Religious Land Use and Institutional Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, and claims for punitive damages, and injunctive relief as against the Las Cruces defendants be denied.

Richard L. Puglisi
United States Magistrate Judge